# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

PATRICIA A. DIAZ,       )
          Plaintiff,    )
                  )
     v.             )     CAUSE NO.: 2:12-CV-46-PRC
                  )
CAROLYN W. COLVIN,   )
Acting Commissioner of the  )
Social Security Administration, )
          Defendant.   )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Patricia A. Diaz on February 1, 2012, and Plaintiff's Memorandum in Support of Her Motion for Summary Judgment [DE 15], filed by Plaintiff on August 7, 2012. Plaintiff requests that the February 16, 2011 decision of the Administrative Law Judge denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") be reversed or remanded for further proceedings. On October 16, 2012, the Commissioner filed a response, and Plaintiff filed a reply on October 30, 2012. For the following reasons, the Court grants the relief sought.

## PROCEDURAL BACKGROUND

On June 23 and 24, 2009, Plaintiff filed applications for DIB and SSI respectively, alleging an onset date of June 1, 2005. Her applications were denied initially on September 15, 2009, and upon reconsideration on December 11, 2009. Plaintiff timely requested a hearing, which was held on January 5, 2011, by video, before Administrative Law Judge ("ALJ") Kathleen Mucerino. In appearance were Plaintiff, her son Austin Mendez, her attorney James Balanoff, and vocational expert ("VE") Leonard M. Fisher. The ALJ issued a written decision denying benefits on February 16, 2011. She made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.  The claimant has not engaged in substantial gainful activity since June 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: history of bulging lumbar disc, with restricted range of motion; and history of arthritic changes to spine (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, and can occasionally balance, stoop, kneel, crouch, or crawl. She can only understand, remember, and consistently carry out short, simple, one-to-two step rote, routine instructions or tasks. Additionally she must work in a socially-restricted environment, having no contact with the general public, and only necessary contact with co-workers and supervisors.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born [in 1971] and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 9-17.

On October 17, 2011, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff requested and was granted additional time to file a civil action. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A. Medical Evidence

Plaintiff suffers from back pain and complained of pain throughout the record. Her doctors and other treaters found tenderness and a reduced range of motion in her lumbar spine, as well as muscle spasms in her back. Plaintiff had an MRI of her lumbar spine done in March 2009, which revealed degenerative disc and facet disease of the lumbar spine, compromise of bilateral lateral recesses at L4-L5 and left neural foraminal narrowing at L4-L5. In September 2009, Plaintiff attended a consultative examination at the request of Disability Determination Services, and the doctor diagnosed her with history of bulging disc in the lumbar spine with restricted range of motion and history of arthritic changes to the spine.

The consultative examiner reported abnormal findings including tenderness in the lumbar region with restricted range of motion, that Plaintiff's straight leg raise test was positive bilaterally, that she was unable to stoop and squat, and that she could only get on and off the examination table and stand from a sitting position with difficulty.

Plaintiff's treating physician, Dr. Chand, completed a residual functional capacity form on her behalf, indicating that she had a history of lumbar spine degenerative disc disease and chronic lower back pain. The doctor opined that due to her impairments, Plaintiff could only lift less than ten pounds and walk/stand one hour and sit two hours total in an eight-hour workday.

## B. Hearing Testimony

*1.    Plaintiff*

Plaintiff testified that she was unable to work because she suffered from a great deal of pain. She was most comfortable lying down and was unable to stand or sit for long periods, and her pain made her irritable and cry at times. She had difficulty sleeping at night due to her pain, and the medications she took made her drowsy. It was difficult to get things done due to her drowsiness from the medications and lack of sleep.

Plaintiff testified that she tried cortisone injections, which gave her some relief from the pain but only on a temporary basis. She had also tried physical therapy and a back brace. She tried working part-time in 2007 at a physical therapist's office but the job lasted only five months because even filing and sitting and answering the phones was too difficult. She testified that her 16-year-old son did a majority of the housework.

*2.     Plaintiff's son*

Plaintiff's son testified that he did many of the household chores, including the dishes, sweeping, mopping, laundry, helping with grocery shopping, and cleaning the bathroom, due to his mother's pain. He observed his mother in pain and when she tried to do something around the house she usually ended up lying down crying. She sat in unusual positions when in pain, and he had seen her cry from pain multiple times.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v.*

*Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171,

1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d

668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of

proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d

at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff makes three arguments for remand of the ALJ's decision: (1) the ALJ failed to

properly analyze the opinion of Plaintiff's treating physician; (2) the ALJ failed to make a proper

credibility determination; and (3) the ALJ erred in accepting VE testimony that was inconsistent

with the Dictionary of Occupational Titles. The Court considers each in turn.

### A. Weight to Treating Physician Opinion

Plaintiff argues that the ALJ erred by failing to properly analyze the weight given to her

treating physician. An ALJ must give the medical opinion of a treating doctor controlling weight as

long as the

> treating source's opinion on the issue(s) of the nature and severity of [a claimant's]
> impairment(s) is well-supported by medically acceptable clinical and laboratory
> diagnostic techniques and is not inconsistent with the other substantial evidence in
> [a claimant's] case record . . . .  When we do not give the treating source's opinion
> controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii)
> of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this
> section in determining the weight to give the opinion.  We will always give good
> reasons . . . for the weight we give to your treating source's opinion.

20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Schaaf v. Astrue*, 602 F.3d 869, 875

(7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d

375, 376 (7th Cir. 2006); SSR 96-8p, 1996 WL 374184 (Jul.2 1996); SSR 96-2p, 1996 WL 374188

(Jul. 2, 1996). In other words, the ALJ must give a treating physician's opinion controlling weight

if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic

techniques" and (2) it is "not inconsistent" with substantial evidence of record." *Schaaf*, 602 F.3d at 875.

The referenced factors listed in paragraphs (c)(2) through (c)(6) are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors such as the familiarity of a medical source with the case. 20 C.F.R. §§ 404.1527(c), 416.927(c). "[I]f the treating source's opinion passes muster under [§ 404.1527(c)(2)], then there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it." *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Hofslien*, 439 F.3d at 376). Courts have acknowledged that a treating physician is likely to develop a rapport with his or her patient and may be more likely to assist that patient in obtaining benefits. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives a good reason. *Schaaf*, 602 F.3d at 875; *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

In this case, Plaintiff's treating physician, Dr. Chand,[1] submitted an opinion consistent with a finding of disability. Dr. Chand indicated that Plaintiff had a history of lumbar spine degenerative disc disease and chronic lower back pain. Dr. Chand opined that, due to her impairments, Plaintiff could only lift less than ten pounds and walk/stand one hour and sit two hours total in an eight-hour workday. The ALJ stated that she gave Dr. Chand's opinion "little" weight because it did not

---

[1] The ALJ indicated in the opinion that Exhibit 8F is from Dr. Krishna. (AR 14). However, although Dr. Krishna's name is typed on the form, that doctor's name is crossed out and Dr. Chand's name is written in; the form is signed by Dr. Chand. (AR 555-56). At the hearing, it was also stated that the opinion was from Dr. Chand. Thus, the Court finds that the opinion was from Dr. Chand and will be treated as such.

comport with the medical evidence of record, and the ALJ found that Plaintiff was not as limited as Dr. Chand opined. The ALJ also stated that the "possibility always exists that a doctor may express an opinion in an effort to assist a patient" and that "patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians." (AR 14).

For several reasons, the Court finds that the ALJ failed to properly analyze Dr. Chand's opinion, requiring remand for further proceedings. First, the ALJ's analysis of the opinion does not include a discussion of the factors required by 20 CFR 404.1527(c). The ALJ did not consider that Dr. Chand was an orthopedic surgeon and, thus, a specialist in treating back conditions. Nor did she consider that Dr. Chand had been seeing Plaintiff since at least January 2005 and thus had seen her the entire time between her alleged onset date of disability in June 2005 through at least February 2010. Plaintiff was frequently treated by Dr. Chand, who also worked alongside Plaintiff's primary care physician, Dr. Pahuja at Southeastern Medical Centers. Dr. Chand referred Plaintiff to physical therapy for her back pain. These factors all support adopting Dr. Chand's opinion, yet the ALJ did not discuss them before determining that Dr. Chand's opinion was entitled to little weight. This was an error. *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); *Punzio*, 630 F.3d at 710; *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Second, the ALJ failed to provide good reasons for her rejection of Dr. Chand's opinion. The ALJ made blanket statements, unsupported by citations to the record or Dr. Chand's treatment records, that Dr. Chand's opinion did not "comport with the medical evidence of record" and that she did not agree that Plaintiff was as limited as Dr. Chand opined. The ALJ's conclusory, unsupported statements do not provide a sufficient reason to reject a treating doctor's opinion. *See*

*Jelinek*, 662 F.3d at 811 ("The ALJ's decision does not allow us to conclude that he weighed the merits of Dr. Radzeviciene's opinion, let alone engaged in the careful analysis required by the regulations and case law."); *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011).

Third, the ALJ's general statements about doctors trying to assist their patients or patients being insistent on getting doctor reports also does not provide support for the ALJ's rejection of Dr. Chand's opinion. In *Punzio*, the Seventh Circuit held that the ALJ made a similar error in rejecting the treating doctor's opinion in part because the claimant or his representative had solicited the opinion. 630 F.3d at 712 ("The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity. . . . How else can she carry this burden other than by asking her doctor to weigh in?"). The ALJ's discussion is simply a general statement about treating doctor opinions that would apply in every case in which a treating doctor supplied an opinion. As the Seventh Circuit recognized in *Punzio*, the Social Security Administration's own regulations encourage treating doctor opinions, and the "'Best Practices'" section of its website "recognizes the value of this approach by urging claimants and their representatives to submit a doctor's statement." *Id*. at 712-13.

The ALJ provided no reasoning or analysis specific to Plaintiff or Dr. Chand's opinion in her giving the opinion "little" weight. Although the Commissioner is correct that the ALJ set out a narrative of the medical evidence prior to discussing the opinion evidence, there is no analysis of or citation to this evidence by the ALJ in connection with the weight given to Dr. Chand's opinion. The Commissioner also suggests that the ALJ discounted Dr. Chand's opinion because it was based on plaintiff's subjective complaints of pain; this reason was not given by the ALJ. The Commissioner may not provide the ALJ's rationalization. *See Jelinek*, 662 F.3d at 812. With the

exception of the ALJ's summary of the opinion, the paragraph of the decision weighing Dr. Chand's opinion could have been picked out of any decision containing a treating physician opinion and contains no reasoning specific to this case.

Because the ALJ failed to provide "good reasons" for giving little weight to Dr. Chand's opinion and because the adoption of Dr. Chand's opinion would have found Plaintiff disabled, this matter is remanded for a proper determination. *See Scott*, 647 F.3d at 739 ("An ALJ must offer 'good reasons' for discounting the opinion of a treating physician. . . . Here, the reasons the ALJ gave for discounting Dr. Tate's assessment do not meet this standard."); *Campbell*, 627 F.3d at 306 ("The ALJ gave two reasons for not giving controlling or great weight to Dr. Powell's assessment of Campbell's functional limitations: the absence of significant abnormal findings at the time of the December 2005 evaluation and the failure to investigate the possible effect of alcohol on Campbell's functioning. Neither of these qualifies as a 'good reason.'").

### B. Credibility

Next, Plaintiff contends that the ALJ made a conclusory disability determination and that the reasons given by the ALJ in support of the negative credibility determination are erroneous. In making a disability determination, Social Security Regulations provide that the Commissioner must consider a claimant's statements about his symptoms, such as pain, and how the claimant's symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id*. In determining whether statements of pain contribute to a finding of disability, the Regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be

expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id*.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms;
(7)     Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how the conditions affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996); *see also* §§ 404.1529(c)(1); 416.929(c)(1).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-

11 (7th Cir. 2012) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738.

Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons

supported by the record." *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v.*

*Astrue,* 580 F.3d 471, 477 (7th Cir. 2009)).

As an initial matter, Plaintiff is correct that, after setting forth Plaintiff's allegations but

before discussing the medical and opinion evidence and ultimately conducting a credibility analysis,

the ALJ used the transitional paragraph that has come to be known as "meaningless boilerplate,"

*Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012):

> After careful consideration of the evidence, the undersigned finds that the claimant's
> medically determinable impairments could reasonably be expected to cause the
> alleged symptoms; however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not credible to the extent they
> are inconsistent with the above residual functional capacity assessment.

(AR 12). However, an ALJ's use of this template does not amount to reversible error if she

"otherwise points to information that justifies [her] credibility determination." *Pepper*,712 F.3d at

367-68. In other words, the use of the template does not warrant remand when the ALJ gives other

reasons, grounded in evidence, to explain her credibility determination. *See Filus v. Astrue*, 694 F.3d

863, 868 (7th Cir. 2012). In this case, remand is warranted because most of the specific reasons

given by the ALJ for the credibility determination are unsupported by the evidence or are logically

flawed.

First, one specific reason given by the ALJ for finding Plaintiff not credible was that, despite

her allegation that she could not sit for long periods of time, Plaintiff nevertheless sat for almost 45

minutes at the hearing and portrayed no evidence of pain or discomfort. However, the ALJ

erroneously failed to acknowledge that, during the video-conference hearing, Plaintiff's attorney

specifically noted that the Plaintiff was leaning way over to one side and pushing up on her chair, and Plaintiff's son testified that he sees her sit like that when she is in pain. The hearing began at 3:18 p.m. and ended at 3:55 p.m.; thus, it appears that even in that 37-minute time frame Plaintiff was in pain from sitting. The ALJ neither disputed the attorney's observations at the hearing regarding how Plaintiff was sitting or that she appeared in pain nor did the ALJ discuss this evidence in her decision. Thus, this factor does not support the ALJ's credibility determination. *See Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (noting that credibility determinations "based on errors of fact or logic" are not binding on courts).

In finding Plaintiff not credible, the ALJ also stated that, although Plaintiff testified that she was advised that surgery was the next step, there was no indication in the medical records that any physician had recommended surgery. However, this inference by the ALJ that Plaintiff was not credible simply because her doctor(s) may not have written in their notes that surgery would be the next step is an incorrect inference. *See Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994) ("[W]e conclude that the ALJ based his finding on an incorrect inference."). The ALJ does not cite anything in support of her apparent assumption that doctors record every statement made to their patients. Perhaps Plaintiff asked what the next step might be and her doctor said surgery—that might well be a comment that would not appear in the doctor's notes because the doctor was not recommending surgery at that time. Moreover, if the ALJ questioned whether Plaintiff was telling the truth she should have conducted further inquiry of Plaintiff at the hearing and then contacted the doctor, if necessary, to ask if he or she did in fact indicate that surgery would be the next step before relying on that reason to find Plaintiff not credible. *See Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000) (recognizing that the ALJ has a duty to develop a full and fair record).

The ALJ also based her adverse credibility determination on the fact that, although Plaintiff testified that her four-year-old daughter was very well behaved, the "fact remains that the claimant is home alone all day with her and must care for her." (AR 15). Plaintiff testified that on a typical day she would lie down most of the day while her daughter watched television next to her. Her older daughter and her son also helped care for her younger daughter. The ALJ erred in failing to consider all of these facts and erroneously relying on the mere fact that Plaintiff cared for her young daughter to discredit her testimony. *See Martinez*, 630 F.3d at 697 (holding that the ALJ "absurdly" found that the claimant maintained an active lifestyle and cared for her five children when the evidence showed that her mother and three of her children helped care for her); *Mendez v. Barnhart*, 439 F.3d 360, 362-63 (7th Cir. 2006) (finding that the ALJ unduly relied on evidence that the claimant cared for her four children when there was evidence that she had other people helping her care for them); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (holding that the ALJ erroneously relied on the fact that the plaintiff cared for her two small children and took care of her own personal needs in finding her not disabled).

The ALJ also stated in the credibility determination that there were gaps in treatment of up to six or seven months at a time. Again, there is no evidentiary support given in the decision for that statement and no indication of when the alleged gaps in treatment took place. The ALJ also did not ask Plaintiff about any perceived lack of or gaps in treatment at the hearing to give her a chance to explain them. It was error for the ALJ to make a blanket assertion that Plaintiff was not credible due to gaps in treatment with no support and to fail to ask Plaintiff if there were reasons for any gaps in treatment. *See* SSR 96-7p ("[ALJs] must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first

considering any explanations that the individual may provide. . . . The individual may be unable to afford treatment and may not have access to free or low-cost medical services."); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft*, 539 F.3d at 679. Moreover, the record reflects that, in March 2012, Plaintiff went to the emergency room for severe pain and stated that she had been seeing a doctor but her Medicaid had run out, suggesting that lack of funds may have been a reason for any gap in treatment. The ALJ erred in failing to consider this evidence. *See Craft*, 539 F.3d at 679 ("[A]lthough the ALJ drew a negative inference as to Craft's credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that Craft had reported an inability to pay for regular treatment and medicine.").

Lastly, the ALJ cited evidence that she believed demonstrated that Plaintiff was not credible and exaggerated her symptoms and limitations. The ALJ stated that the MRI showed "only" minimal degenerative disc disease or arthritis of the spine. (AR 15). However, the March 2009 lumbar spine MRI revealed degenerative disc and facet disease of the lumbar spine, compromise of bilateral lateral recesses at L4-L5, and left neural foraminal narrowing at L4-L5. The ALJ cited nothing in support of her assumption that these findings were not significant or were "minimal" and could not cause the level of pain Plaintiff reported. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (holding that the ALJ mischaracterized evidence when he found an EEG "unremarkable" even though there was evidence of a "slight" neurological disturbance).

The ALJ further erred in only relying on evidence that she asserted was normal and ignoring evidence favorable to Plaintiff. Plaintiff's doctors and other treaters found tenderness and a reduced range of motion in her lumbar spine upon examination, as well as muscle spasms in her back. *See*

(AR 355, 453, 455, 458, 459, 462, 464, 607, 611, 618). Although the ALJ cites to the treatment records of Dr. Chand, *see* (AR 12-13), a review of the pages cited compared to the treatment records identified by the Plaintiff makes it appear that the ALJ selectively cited from the records. The consultative examiner also reported abnormal findings, including tenderness in the lumbar region with restricted range of motion, that Plaintiff's straight leg raise test was positive bilaterally, that she was unable to stoop and squat, and that she could only get on and off the examination table and stand from a sitting position with difficulty. Although the ALJ noted these findings along with the consultative examiner's less favorable findings, the ALJ did not discuss how these favorable findings affected the credibility determination. *See Binion o/b/o Binion v. Chater*, 108 F.3d 780, 788-89 (7th Cir. 1997) (holding that an ALJ must not "pick and choose among the pieces of evidence" (citing *Herron*, 19 F.3d at 333); *see also Schreiber v. Colvin*, 519 F. App'x 951, 960 (7th Cir. 2013); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). The ALJ's failure to provide sufficient and logically sound reasons for finding against Plaintiff warrants remand. *See Brindisi*, 315 F.3d at 787.

Plaintiff also argues that the ALJ failed to perform a proper pain analysis because the ALJ did not analyze the factors set forth by the Seventh Circuit Court of Appeals in *Zurawski*:

> If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities.

*Zurawski*, 245 F.3d at 887-88 (citing Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994)).

The ALJ did not consider many of these factors when finding plaintiff not fully credible as to her pain, despite fully discussing the normal examination findings of Dr. Smejkal and Dr. Macabailitaw. First, Plaintiff consistently complained of the pain. *See* (AR 354, 358, 454, 455, 459, 462, 558, 603, 605, 610, 618, 627, 635, 638, 644, 648). Plaintiff's pain was described by her treaters as "chronic" and "constant." (AR 354, 385, 455, 618, 627). The ALJ also did not consider any precipitating or aggravating factors. The medical records indicate, consistent with her testimony, that Plaintiff's pain was made worse with standing, walking, bending, lifting and prolonged sitting. (AR 54, 358, 605, 611, 618). The ALJ recognized that Plaintiff took numerous pain medications and had tried many in the past (AR 12), but failed to explain how that did not support her allegations of severe pain. The ALJ also recognized in the summary of the evidence that Plaintiff has had "numerous" pain injections (AR 12) but again did not explain how that did not support Plaintiff's testimony. The fact that someone would undergo multiple injections in her spine does not lend support to the ALJ's conclusion that Plaintiff had "exaggerated symptoms." (AR 15); *see Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (highlighting the improbability that the plaintiff would have undergone extensive pain-treatment procedures solely to strengthen the credibility of her complaints of pain and to increase her chances of obtaining disability benefits and the improbability that she fooled the doctors, emergency-room personnel, and other medical workers into thinking she suffered extreme pain enough that they provided her with the treatments). Although the ALJ cited evidence that Plaintiff had fairly good pain relief from the injections (AR 12), she ignored that Plaintiff indicated that the relief from the injections was merely temporary; in October 2012, Plaintiff had only gotten three days of relief from the previous injection, and, in the last note from December 2012, her pain was relieved by medication 25-50% and by injection only 0-25%.

(AR 644, 649). The ALJ also noted in the summary of the evidence that Plaintiff was prescribed a lumbo-sacral corset and underwent physical therapy, (AR 12), but did not explain her consideration of these facts that further support Plaintiff's allegations of severe pain.

As for activities of daily living, although the ALJ relied on Plaintiff's care for her youngest daughter in finding her not credible, the ALJ did not consider any other activities of daily living in her analysis of Plaintiff's pain and credibility. Plaintiff testified that she spent most of her time lying down for pain management and that her son did a majority of the housework because she was unable to do so. Her son similarly testified that he did most of the chores around the house. The ALJ offers no explanation for how this testimony was considered.

Although the ALJ may ultimately come to the same conclusion regarding Plaintiff's credibility, remand is necessary for the ALJ to fully consider all the evidence of record and to properly consider the required factors when determining credibility.

### C. Dictionary of Occupational Titles

Plaintiff argues that there are two errors related to the vocational expert's testimony relied on by the ALJ to find that Plaintiff is not disabled. First, Plaintiff argues that there is an inconsistency between the level 2 reasoning level of the jobs identified by the VE and the limitations in the hypothetical to simple instructions or tasks and one-to-two step, rote instructions. In the RFC, the ALJ limited Plaintiff to being able to "only understand, remember, and consistently carry out short, simple, one-to-two step rote, routine instructions or tasks." (AR 10). At the hearing, the ALJ gave a hypothetical question to the vocational expert of a person with "concentration, persistence and pace [that] has a moderate impact making it hard for her to concentrate and keep up her persistence and pace and therefore she can understand, remember and consistently carry chores[sic]

on both one to two step, [inaudible] instruction or tasks." (AR 54). Two of the three jobs identified by the VE were the unskilled, light jobs of cleaner and electronics worker. The VE testified at the hearing that these jobs have an SVP of 2.

The Dictionary of Occupational Titles ("DOT") assigns each job a General Educational Development ("GED") score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dep't of Labor, Dictionary of Occupational Titles, App'x C(III). The GED scale is composed of three divisions—reasoning development, mathematical development, and language development. *Id*. Reasoning Development Level 1 provides: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id*. Reasoning Development Level 2 provides: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id*.

The DOT lists the electronics worker and inspector jobs identified by the VE (726.687-010 and 727.687-062, respectively) as requiring a level 2 reasoning, which Plaintiff argues is at odds with the ALJ's limitation of Plaintiff not only to simple instructions or tasks, but also to only one-to-two step rote, routine instructions or tasks. This Court dealt with the identical issue in *Wiszowaty v. Astrue*, No. 2:11-CV-7, 2012 WL 967415 (N.D. Ind. Mar. 21, 2012), and *Pomilia v. Astrue*, No. 2:11-CV-15, 2012 WL 691628 (N.D. Ind. Mar. 2, 2012). In both cases, the Court recognized that, although the Seventh Circuit has not addressed the issue, several courts have concluded that a limitation to one- to two-step tasks is consistent with GED Reasoning Development Level 1, and in both cases found that the language of the plaintiff's limitations mirrored the language

of Level 1. *See Wiszowaty*, 2012 WL 967415, at *20 (citing case); *Pomilia*, 2012 WL 691628, at *19 (same). Again, in this case, it appears to the Court that Plaintiff's limitations are consistent with Level 1 reasoning, which is at odds with the Level 2 reasoning listed in the DOT for the electronics worker and inspector jobs identified by the VE.

The question then becomes, as in *Pomilia* and *Wiszowaty*, whether the ALJ should have recognized the conflict between the testimony and the DOT at the hearing on the record in this case. Social Security Ruling 00-4p provides that, "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The VE testified that the Specific Vocational Preparation ("SVP") classification for each of the jobs was 2; however, there was no discussion of the GED reasoning level for each. In contrast with the GED categories, the SVP refers to the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dep't of Labor, Dictionary of Occupational Titles, App'x C(II), 1991 WL 688702. At the completion of the questioning, the ALJ inquired whether the VE's testimony about the identified jobs was consistent with the information in the DOT, and the VE answered, "I think generally it's consistent." (AR 56).

The Seventh Circuit has held that an ALJ may rely on imperfect VE testimony if a claimant does not question the basis for the testimony at the time of the hearing. *Overman v. Astrue*, 546 F.3d 456, 455-56 (7th Cir. 2008) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004)). Plaintiff's attorney did not raise the issue

of the applicable GED reasoning level of the positions at the hearing. Plaintiff argues that the ALJ should not have relied on the VE's testimony when the VE was not certain that the testimony was consistent with the DOT. *See Terry*, 580 F.3d at 478 (citing *Overman*, 580 F.3d at 463) ("Because Terry did not identify any conflict at the hearing, she would have to show that the conflict was 'obvious enough that the ALJ should have picked up on [it] without any assistance.'"). The Court cannot say on this record that the conflict between Plaintiff's limitation to one- to two-step tasks and jobs with a GED Reasoning Development Level 2 was so obvious that the ALJ should have picked up on the conflict without the assistance of counsel. Nevertheless, because there does appear to be a conflict and because the case is being remanded on other grounds, the ALJ is instructed to ask the VE about the conflict, if applicable, on remand. *See Gilbert ex rel. S.E. v. Colvin*, No. 12 C 6550, 2013 WL 4599348, *15 (N.D. Ill. Aug. 29, 2013) (instructing the ALJ, in a case being remanded on other grounds, to clarify how the RFC was consistent with a job that required a Level 2 reasoning (citing *Wiszowaty*, 2012 WL 967415; *Pomilia*, 2012 WL 691628).

Second, Plaintiff argues that the remaining job identified by the VE, which was a cleaner, also conflicts with the ALJ's limitation on Plaintiff to no contact with the general public. Plaintiff reasons that the vocational expert should have explained how someone cleaning in "commercial establishments" would never have contact with the general public based on the description in the DOT (#323.687-014). On remand, if this job is again identified by the VE, the ALJ shall inquire of the VE whether this job is in conflict with the requirement of no contact with the general public.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Memorandum in Support of Her Motion for Summary Judgment [DE 15], and **REMANDS** the

Commissioner of Social Security's final decision for further proceedings consistent with this

Opinion and Order.

So ORDERED this 30th day of September, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:      All counsel of record